HORTENSE SALSBURY, PLAINTIFF-RESPONDENT, v. BORO BUSSES CORPORATION, DEFENDANT-APPELLANT.

Submitted May 2, 1939—Decided July 22, 1939.

For the plaintiff-respondent, *Thomas P. McKenna.*

For the defendant-appellant, *Quinn & Doremus* (*Thomas P. Doremus,* of counsel).

The opinion of the court was delivered by

PORTER, J.  This case is on appeal from a verdict of $6,000 rendered in the Monmouth County Court of Common Pleas in favor of the plaintiff-respondent against the defendant-appellant for personal injuries received by her shortly after alighting from defendant-appellant's bus in which she had been a passenger.

It is not disputed that Mrs. Salsbury, a woman seventy-eight years old, was a passenger on the bus; that she alighted at the intersection of Broadway and Jackson street, Long Branch, where the bus stopped for that purpose; that after she had left the bus and had taken several steps the bus door was closed mechanically by the operator and the bus resumed its journey; and that she then fell to the pavement in the street alongside of the bus and near to it, and was hurt.  It is also not disputed that Mrs. Salsbury was wearing a long, loose, black coat.  What caused her to fall is sharply disputed.  The version of the plaintiff-respondent is that her coat became caught in some part of the bus, probably in the door as it was shut by the operator before the trailing coat had cleared the vehicle; that she was unable to extricate it and was therefore thrown to the ground when the bus got under way and before the coat became free.

The version of the defendant-appellant is that Mrs. Salsbury alighted safely and had moved away from the bus a sufficient distance to permit it to start without interfering with her movements in any way; and that her coat had not become caught in the closing door or in any part of the vehicle.

Several witnesses, passengers in the bus, testified that Mrs. Salsbury grasped the crossbars at the third window in the rear of the door after she had alighted at or about when the bus started up and retained her hold before falling and while the bus was moving.

Mrs. Salsbury did not testify, though present at the trial. Why she took hold of the window bars can only be inferred from the circumstances as testified to.

Motions for nonsuit and directed verdict were made by defendant-appellant, and denied. It appears that during the arguments on these motions, and perhaps also in summations, counsel made reference to the doctrine of *res ipsa loquitur*. In any event the trial judge thought fit to explain that doctrine to the jury in the course of his charge.

The argument on behalf of the defendant-appellant is three-fold. First, that no *prima facie* case of negligence having been presented the motion for a nonsuit should have been granted. Second, that error was also committed in the failure of the court to direct a verdict for the appellant-defendant at the end of the case because there was no factual question presented for the consideration of the jury. Third, that the court' instruction to the jury concerning the doctrine of *res ipsa loquitur* was reversible error because the doctrine had no application to the case.

A careful examination of the testimony satisfies us that there were factual questions in dispute as to how this accident occurred, which required the consideration of the jury. While it is true that there was very little testimony to establish the theory of the door having been shut too soon and thus catching and holding fast the plaintiff-respondent's coat, still there is some testimony from which reasonable minds might so find by such testimony as the position and appearance of the coat as it was seen in the air at the time of her fall and the fair inferences which might be drawn therefrom. It may also well be that the explanation of the strange behavior of this elderly woman in grasping the window bars of the bus, which she must have known was about to resume its journey, was because she found her movements restricted because her garment was caught fast and she perhaps was trying to acquaint the passengers of her plight, or may have grasped the bars in a futile attempt to save herself from falling. To draw inferences from testimony is for the jury as the finders of the facts, provided that a proper basis be established as was done in the instant case.

We are not concerned with the weight of the testimony on this appeal, but only with the question of whether there was any credible evidence or inferences which might properly be drawn therefrom to support the verdict.

Concluding that the plaintiff did present such evidence which if believed justifies the verdict, there was no error in the refusal of the trial court in granting a nonsuit or directed verdict in favor of the defendant-appellant.

The third ground of appeal, as above noted, alleges reversible error by the trial court in what was said in the charge concerning the doctrine of *res ipsa loquitur*.

While we fail to perceive any application of this doctrine to the facts in the instant case we are not called upon to decide this point, indeed are precluded from doing so, for the reason that the question is not properly raised. The rule is that the court's language must be embodied in the ground of appeal and not, as here, merely a reference to the subject-matter of the charge. *Dunne* v. *Hely*, 104 *N. J. L.* 84; *O'Brien* v. *Staiger*, 101 *Id.* 526.

The judgment will be affirmed.